United States v. Bradley, whenever the lawyers are ready. You can come on up, Ms. Hester. We won't start without everybody seated. Don't worry. I have a lot of things to say. Do you know anything about the documents? I still don't, no. Shall I go ahead? Absolutely, good morning. May it please the court, Anne Hester representing Cecelia Bradley. The order requiring Bradley to pay restitution for William Byrd's injuries is illegal. Because it requires Bradley to pay restitution for injuries to a person who is not a victim under the applicable statutory definition. And Bradley's plea agreement also doesn't extend restitution liability to Byrd. Can you look at the plea agreement language because you would agree that a plea agreement can trump the statute, right? That's correct. Okay, so if you look at the plea agreement language with me. I have it right in front of me. You have it with you? Yeah. To pay full restitution to all victims directly or indirectly harmed by Bradley's relevant conduct, including conduct pertaining to any dismissed counts. Why doesn't that cover what we have here? Because William Byrd is not a victim under the statute. But that doesn't allow, remember we started out with the conception that the plea agreement can trump the statute. So you don't have to be a victim under the statute if you enter into a plea agreement saying you're going to do something. If you enter into a plea agreement that changes the definition of victim. And you have to look at the plea agreement as a whole because the purpose of contract interpretation is to figure out what the party's intent is. Is your point that the victim there doesn't change the statutory definition of victim? That's my point. And there are other parts of the plea agreement that indicate that the party specifically in this case didn't have any intent to extend restitution liability to this particular person. Then why do you have, why does it include uncharged offenses and what's the point of the plea agreement? The point of the plea agreement was for Bradley to not have any liability for the acts that were committed against Byrd. That was what she was getting out of it. Presumably the contract is for the benefit of both parties. And it seems to me your interpretation of the plea agreement renders all of that language, which is very expansive, it clearly goes beyond the statutory definition of victim, meaningless. I don't think it clearly, first of all, this is a boilerplate restitution provision. You've seen this before. You saw it in Squirrel in 2009. And has it ever been interpreted the way you would have it interpreted? No, but it's never been interpreted the way they would have it interpreted either. This is a provision that the government puts in every case. It's in drug cases. And there aren't even any victims in drug cases. Well, they don't have anything to worry about. Right. But what I'm saying to the court is you have to look at the plea agreement as a whole. And there are three provisions that bear on this, actually, aside from the restitution provision. Take a look at paragraph 7, which is the only, that's on page 101 of the joint appendix. That is the only provision in this plea agreement that is tailored for this defendant and is not boilerplate. Okay. And in paragraph 7C, it provides, the parties agree that the victim sustained bodily injury pursuant to U.S.S.G. 2A2.2B3A. Now, there are two parts of that sentence that indicate that the parties did not intend to extend restitution, in this case, to Byrd. First of all, it talks about a singular victim, not plural victims. But second, it demonstrates an agreement that Bradley's relevant conduct did not harm Byrd, because if that had been the case, the agreement would have provided that the victim sustained serious bodily injury, which is injury requiring hospitalization, because Byrd was stabbed and he did require hospitalization, while Crow, which is the person that Bradley actually assaulted, did not require hospitalization. She was released. The difficulty that I have with that argument is that it appears to be taking language that is quite clear on its face and introducing ambiguity. Well, I don't think that the language is quite clear on its face, and I'll explain to the court why. We're now to go back to the language about, that I read to you. Is that right? Right. Back to paragraph 8A. This actually is a confusing paragraph, because it doesn't define the term victims in any way other than under the MVRA or the VWPA. And actually, in barefoot, that's a term of art. And in barefoot, the court said that leaving a term of art undefined is sufficient to require application of the statutory definition. But four additional factors indicate that the parties actually did understand that victim had the statutory definition in this paragraph. First, that failure to define victims indicates an intent to refer to the statutory meaning of that term. I thought the MVRA also recognized that a court could order restitution to a person other than the victim of the offense, as the statute provides. Certainly. But 20 years ago, in the Blake case, this court explained exactly how that is to be done. And Blake exclusively? Not necessarily exclusively. That was sort of my reading of that language as well. That was, I didn't view that as being, what the MVRA appears to do is to just recognize that a court can order restitution to be paid to victims other than the statutory victims, depending on if the plea agreement so provides. It doesn't delimit, or at least I did not read it as a delimiting language. But at the same time, that case is 20 years old. So the parties, I mean, that is part of what the parties have in their understanding when they're drafting this plea agreement about how that is to be done. But again, you're going beyond, you tell me that the plea agreement language is ambiguous. And to do so, you go to an interpretation of a 20-year-old precedent that doesn't exactly say anything directly on point. It simply refers back to the statute, which allows a plea agreement to do exactly what this agreement does, as I understand it. Honestly, just tell me where my reasoning is falling down. It seems to me that your argument, and I grasp it, but it seems to me it introduces a level of complexity into a scenario that is about as straightforward as I usually see. And maybe that's why I find it so appealing. Okay, well, actually, this paragraph, as you're reading it, is not as clear cut as you would have it. Because there is another statutory term in there, which is offense. And if you'll look at it, the paragraph specifically removes offense from the statutory definition. So reading that paragraph, a person reading it would reasonably think if we were removing victim from that definition, we would also say that the term victim also is not as defined in the statute. But it doesn't do that, which introduces an ambiguity. Doesn't the factual basis also identify Byrd as victim one? The factual basis does identify him as victim one, but the purpose of that was to conceal his identity. And again, I would point the court to, let's look at paragraph 14 of the plea agreement, which specifically talks about the purpose of the factual basis. That paragraph explains exactly what the factual basis is to be used for. And it says that the factual basis can be used by the court and the probation office to determine the applicable advisory guideline range or the appropriate sentence under 3553A. It says nothing about restitution. So first of all, the factual basis is not part of the plea agreement. It's simply attached. And second of all, the parties had an understanding that the purpose of that factual basis was this, was not to be relevant to the district court's determination of restitution. But don't we have to factor that in if we accept your premise that victim is ambiguous? There are arguments, if we do go that route, it would seem to me that there are arguments that cut both ways. But I think that if there are arguments that cut both ways, it's ambiguous. The factual basis does nothing to remove ambiguity because while it describes him as victim one, it also says that Moses Reed was the person who admitted to stabbing the male victim. And also it says that Cecilia Bradley specifically denies having assaulted victim one. Okay, just one more question and I'll leave you alone. And then I'm going to bob you. I'm ready. You always are. How would a plea agreement, here we have a situation in which Bradley took on one victim and so that victim was unable to come to the assistance of another victim. If we read, if we accept your interpretation, how does a plea agreement do what I thought, what it seems to me that this plea agreement is obviously trying to do? It would be very easy actually just by substituting the word individuals for the word victim in that paragraph. And that's what they told the government to do and they haven't done. Or it could specifically say that she's agreeing, I mean to make it abundantly clear for the defendant who's signing the plea agreement, why not just say she is responsible for restitution to this particular individual? I'm sure the government is taking notes. I'm sure they are. How about say victims which include in this case the two, it includes those and maybe others. Right, I mean just to be clear. When I said I was going to bother you, you didn't think I was going to bother you this way, did you? Yeah, I appreciate that kind of bothering. Here's the point. This is what we're put at doing. We're put at, you've already told us, whose agreement is this? Who, for most of this language, did you come up with the language? Absolutely not. The government does, don't they? I mean, in fact, you can look at. Isn't that correct? Yes. Correct. And you can look at this one and see they had to mark out some of the boilerplate. I didn't ask you that. I didn't ask you that. So the government does it. Yes. And then we find ourselves, this is what I don't like. I don't like that we have a U.S. attorney or assistant U.S. attorney that writes an agreement. They control it. And they don't put in it what they later come up, and we spend a lot of our time arguing, gosh, how do we get there? What do we do in that case? Why is there sort of a simple formula? And I thought there was this formula. If you don't say and it's not clear, you government, you write it, you lose. Isn't that the basic rule? That is the basic rule. Yeah. And so if that were the clear basic rule, it would be to assistant U.S. attorneys and U.S. attorneys put in it exactly what you want to do. If you want to use this document to punish somebody, make it crystal clear. By the way, let me also add, I do believe that many times defense lawyers see little problems, and they don't always say we better correct that government. But I'm not sure, quite frankly, that's the burden put on the defense attorney. Do you agree with me? That is not under this court's precedent. If there is an ambiguity, it's interpreted. Even if the defense attorney sees it at the time of the agreement, they sometimes maybe see a little catch in the agreement, and they maybe don't call it to the attention of the government. And he's certainly not suggesting you would ever do this. Well, and I can't even speak to that because I don't do cases in trial court. So I don't know the answer. I haven't quizzed my colleagues. Just let me say, I've seen it. Okay. Both as a district judge and an appeals judge. But I do think the point is, and I think the law is clear, if the government wants to push or hold somebody responsible liable, make it clear. And if it's not clear, you lose. It's not the end of the world. You just lose on this. And you think if you fall out, if the victim isn't clear. What part did you say was specifically added to this plea agreement? That's paragraph 7, which is the paragraph about... Is it just 7? Right. Just 7. And in that, what was added to this says victim. Correct. No S. Victim. Correct. And your argument is we, it's boilerplate, which I think you said actually in your argument. But here, we made one difference to be sure it reflected what the agreement was. And we talk about victim. And you also say about severe bodily injury. Correct. So then you think you fall to a causation argument as to whether or not Bird is a victim. He's not a victim under the statute because he's not a victim of her offensive conviction. What about the directly or indirectly language? Is he indirectly a victim because had Bird not been prevented, had someone been able to come to Bird's assistance, presumably Bird would have not been injured. Isn't that part of the argument? That's part of the argument that the government made in the district court. I don't think that the court actually adopted that particular argument. Can they adopt it on the facts and record of this case? And that's what I was about to say. I think the court should look closely at the factual basis. Can they? No. Why is that so? That's why I was going to the proximal causation. Because there were also three other people, first of all, with the victim, in addition to this woman that our client assaulted. She wasn't the only person there. But the other thing is that there's no indication in the factual basis of when the assault on her occurred in relation to the assault on him. The timing. The timing. It was all of a piece. It wasn't elongated as we have seen in other cases. It was one brawl. We can't tell from the factual basis. It really doesn't reveal that. We know that they showed up on the scene, but we don't know what the elapsed time is because it doesn't say. But it's one brawl. I mean, we may not know that it was 10. We may not be able to delimit it. But we do know it's unlike the case where there was an accessory after the fact. Do you remember the one I'm thinking about? You're talking about the Squirrel K. Squirrel. Yeah. It was two fights that happened within a period of time, or two assaults that happened. We don't know other than our client was involved with Crow. But then they get in the car and drive. They drove up together. They did leave together. And then they left together. Yes. So they were all together at the same time. But time-wise, in relation to each other, we don't know. I think your argument is that the record doesn't reflect whether or not her assault on Crow on this record, it could have come after Bird was stabbed. That's correct. And the record doesn't make that distinction. No. Even if it took two minutes, 30 seconds. This record does not support the fact, does not support a finding, that she was the proximate causation of the stabbing. Because what she did, according to the court, is she, I think, hit somebody with a bat or something. When she hit somebody, the theory is it kept that person from going to Bird's defense to prevent the stabbing. But had the stabbing occurred prior to the bat swing, it wouldn't matter. Right. And we just don't know. We do know that proximate is not indirect. Proximate is an ensuing chain. But indirect isn't. I mean, indirect doesn't require one to necessarily follow the other. That's true. But I think you have to go back to that paragraph because he has to be a victim in the first place before it matters whether it's direct or indirect. Okay. With regard to that paragraph, the paragraph defines dismissed counts or uncharged conduct as defined by a section. And then it also defines, regardless of whether such conduct constitutes an offense, and then it looks to another statutory section. So the fact that it didn't use the provisions that you say define victim, it didn't reference them, does that lead us to an inference that it is not a term that is defined by those statutory provisions? No, it leads to the opposite inference under the Barefoot case. In Barefoot, the term of art. I understand, but we're dealing with this. Did it have, did the Barefoot case also involve a provision in the plea agreement that defined other terms in the same, in the way that this one does? I don't know. I don't remember that it did. I don't know the answer to that question. But I do know that both with. It seems to me that makes it a little different here if it didn't. Well, I don't think that it does because I think that criminal defense lawyers and prosecutors have a common understanding of what the term victim means in the context of restitution. They probably have a common understanding of what dismissed counts or uncharged conduct is too. But that's defined. Right. And also offense. In fact, I think they'd have a stronger understanding of what those things are since they're all key to any criminal case, right? Well, my point is that this paragraph specifically refers to the statutory term and broadens it. If the parties had intended to do that with the term victims, they would have done the same thing. But they didn't. So it's hard to come up with a – victim is a pretty basic term. It's hard to come – I'm trying to think of another. You could use individuals, but I'm not sure one sees victim. That's a pretty ubiquitous term that has a meaning. It could be somebody back at the house who's lost money putting their friend in the hospital. That would be a person. But it does have a – it is a term of art in the context of restitution, and it has a particular meaning that parties in the criminal context would understand to be the statutory meaning. As I understand your argument, you say that these other provisions that are – these other terms that are defined, what citing to the statutory or guidelines provision did was narrow them. But that's not necessarily true. It could be broadening what we ordinarily think of as dismissed counts or uncharged conduct. Well, I mean, it definitely broadened the definition of offense. But my point is if it – and it does that specifically by referring to the statute. But my point is if they had intended to do that.  Okay. Thank you. Thanks. Mr. Enright? So I think we probably were sitting here and taking all in what Judge Schitt said. I wasn't. So what do you have to say in response to that? Well, Your Honor, I guess there's two things I want to say. The first is – I first should introduce myself. Anthony Enright from the United States. May it please the Court. I do think the simplest answer to this question is to look at the plain language of the agreement, which is injuries result or the restitution related to injuries to Byrd was appropriate because Byrd was a victim directly or indirectly harmed by the defendant's relevant conduct. But even if this Court were to accept the defendant's position that victim means the term victim as it's defined in the act, the result is the same. Byrd is a victim. And I think the defense is conflating two parts of the statute. The statute defines victim specifically. The term victim means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered. The definition is very broad. It does not limit victims to victims injured by the offense of conviction. Another provision, another component of the statute imposes that limitation by default. Also, the provision you just read to us did use the term that Judge Shedd used, proximately caused, which is not – I think indirectly is broader in that there is not the same temporal connectivity of result. It's not cause-result. That's correct, Your Honor. I think all we need to determine to figure out whether Byrd is a victim is to determine whether he was injured proximately by the assault on Byrd. In other words, the assault by Moses Reed on Byrd. Do we know that it's proximate? Yes, because Moses Reed stabbed him or one of the folks there stabbed him. Well, the argument is that we don't know what happened first. I think that's a slightly different question. I think that question is whether Moses Reed's assault on Byrd is relevant conduct to the defendant. And that question is a little bit different from whether Byrd qualifies as a victim. You start about reading proximately harmed. That's what you live with. Yes, Your Honor. He needs to have been proximately harmed by his assault, by the assault on Byrd. The assault on Byrd by Moses Reed and the other Reeds is an offense. I see what you're saying. It is an offense. Correct. So he is a victim because that is an offense. It is not the offense of conviction. And if we were just talking about the statute, I don't believe that Ms. Bradley would be responsible for that. But the plea agreement extends her restitution liability to acts that are proximately caused by acts and omissions of others if they are relevant conduct. And I think that was what Judge Shedd was getting at. Because it's only relevant conduct if it's reasonably foreseeable in that it's during the commission of the offense of conviction or in preparation for it or as part of an attempt to evade detection or apprehension. But I think the district court could reasonably have inferred that everything that occurred from the time they got out of the SUV with weapons during this brawl and the time they got back into the SUV with those weapons was during the commission of the offense, and if not during the commission of the offense itself. If you had put their names in this plea agreement the government had, would we be having those? I don't think we would, but we might well be having some other argument. We wouldn't be having this one, would we? Perhaps not, though. Perhaps not. If he owed restitution to Byrd, then we would probably be having an argument over whether this is restitution to Byrd because it's technically payable to, I believe, the hospital. So it would be something else. But it wouldn't be a question of whether or not she was responsible in the first, second, third part for injuries for Byrd, would we? I don't think so, Your Honor, but I think it's perfectly clear because we use the term victims in however defined. Well, you know how perfectly clear it is? You've got a good lawyer arguing on one side and we're asking you questions about it. You may win, but that's a lot of court time. That's true. I somehow suspect we've still seen an appeal if we'd phrased it differently because that's what the defense job is. Let me ask you this. You're arguing like a good lawyer. Do you think your case would be stronger if it said, you agree to pay restitution to the victims here, which victims include Mr. Byrd and others? Do you think your case would be stronger? I think we'd run into the problem I just mentioned, which is the defense counsel would be arguing that Byrd's not actually the victim because he got his treatment at the hospital. So we'd run into another problem there. Victims, I mean, the defense counsel and Judge Duncan both make the point. Victim is a term that we're familiar with, and we might quibble about whether it's a statutory term. Take the victim out and say you agree to pay restitution for the injuries to Crow and Byrd. Why not that? Wouldn't you have a stronger case? I suppose, Your Honor, but there's a question of which injuries. Injuries caused by what? Injuries that they suffered as a result of? We still might have that argument right now. Certainly. But it would knock out the question of whether or not whatever that means covers Byrd. I don't know that it helps you to continue arguing on this point. Maybe I'm missing something. But for you to say it wouldn't help, it would not help you as to whether or not Byrd is covered to have Byrd listed as somebody who is covered by the agreement. It is a fair point. We could have phrased it differently, and we perhaps could have phrased it in a way that avoided the specific argument here. I do believe we phrased it in a way that is clear. I certainly recognize the court might disagree with me. I suggest you go back and talk to the other lawyers and suggest maybe they put names in agreements. I will certainly do that, Your Honor. What does happen, though, is ordinarily we'll have language like this, and then there's a sentencing process at which the victims are determined. Sometimes the court disagrees with us about who is a victim and who ought to receive restitution, and there's a statutory requirement also. Argue that out in front of them and get most of that straight. Do you think a district court would say you don't owe money to Byrd, although you agreed in the agreement to pay for Byrd as part of your plea agreement? Do you think they would say you don't owe Byrd? No, Your Honor. I'm not saying that. It wouldn't have anticipated the specific dispute. Can I ask you to go back? Certainly. My colleagues understand your argument, but I'm not positive I do. So you say, okay, no matter whether you look at the definition of victim, as we would ordinarily think of victim, or the statutory definition of victim, you win. And what language in the statute are you and what statute and what language are you relying on? It's the Mandatory Victims Restitution Act, 18 U.S.C. 3663A, subsection A2. Right. For the purposes of this section, the term victim means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered. So in your argument, I think, and maybe this is what Judge Motz is going, I take your argument to be that Bird is Crow, Bird is a victim under the statute because he was harmed by an offense. An offense. Correct. And the plea agreement makes Bradley liable for harm to him caused by her relevant conduct. Yes, ma'am. Okay. So the fact that, I mean, Bird is a victim of an offense. So there, I think I've, yes. Yes, Your Honor. I understand your argument. I understand the argument now, and I think that what you've said is, yes, Judge Shedd might be right, that we should have written or could have written or might have written or there is a possible way to write this better, but that this doesn't, even if you accept the defendant's arguments. That's correct, Your Honor. I think even if you accept the defendant's arguments, Bird is a victim, and Bird is a victim of the defendant's relevant conduct, and therefore restitution is authorized under the statute because it's included in the plea agreement. I do want to speak, I want to mention the statute, the limitation the defendant refers to, victims being only of the defendant's offensive conviction. That is in the statute. It's just in a different part from the definition of victim. It's in subsection A1, which says when sentencing. So if they're looking at the statutory definition of victim, they take that portion, that statutory definition, not this other provision, because the plea agreement certainly trumps the other statutory. Yes. By default, it's only the offensive conviction, but. Am I to understand that section 8 of the plea agreement that we're discussing here, 8A, is boilerplate? I don't know if I'd use the term boilerplate. It is language that we use fairly regularly. Do you tinker with it upon occasion? I think it's the kind of thing that if the defendant asked us to tinker with, we would consider and perhaps bring to a supervisor. I don't know how often that occurs or not. Well, so that's boilerplate. Perhaps, Your Honor. I mean, it's a term of art that's sometimes used pejoratively, so I prefer to use a different term. Is this the usual thing that's in a plea agreement? It is. Take away boilerplate. It's pretty common. Okay. What about the language in 7? I don't know. I do believe this, amongst some other parts of the plea agreement, for example, identifying the specific counts in the Bill of the Indictment, the statutory maximum and the case name, those are things that were adjusted for this. These are the specific offense characteristics that they agreed to. I do think these were tailored, but honestly, that's just based on reading it now. You weren't the lawyer that handled this? That's true. And you didn't discuss it with the lawyer that did? Well, the lawyer that handled it, Your Honor, I think, was out of our office before I got there. But I have only considered the language in paragraph 7 when I heard the defense counsel mentioning it a few moments ago. But I do believe it is tailored to this offense. So this argument you don't believe is made in the defense counsel's brief? Pardon me? You don't think that the argument that the defense counsel made was made in the defense counsel's brief? Well, I think the general argument was. I'm just telling you the truth, Your Honor. I hadn't looked at paragraph 7 and tried to figure out its origins or relevance to this case until just a few moments ago, and it may be my own failing for doing that. She said it was tailor-made for this case. If we accept that. I have no reason to believe that's not true. If we accept that, then what do we do with that C language? It says victim sustained bodily injury. It doesn't sound like victims, and it doesn't sound like serious bodily injury. But what are we to do with the specific bargain for provision that is not boilerplate? I don't think it's particularly relevant, Your Honor, because the question of the provision that's governing here that's in dispute here is what is the meaning that that language reasonably permits, and I think that's pretty straightforward. Well, first of all, it's not that straightforward. She made a reasonable argument, as honest in her argument, to be wrong, that she specifically bargained for this language, and that language reflects the specific bargain for thing that she wanted or was willing to agree to. Well, that seems to me different. You're making some theory on what A is, and I do understand your argument. We just ignore the bargain for 7C. We just don't count that? Well, I don't think you need to not count it. There are different provisions that were negotiated, I suppose, differently. You don't see them as inconsistent? I don't see them as inconsistent, Your Honor. One is a specific offense characteristic under the guidelines, and I don't know how much thought was put into negotiating, whether it would be a bodily injury or a serious bodily injury. Of course, what you're saying about that, we shouldn't be paying attention to that because you have no idea what happened. Well, that's not the reason. I think it's not necessarily relevant, not because I don't know. That's my fault, and if the court wants to know about it and I don't know, that's my problem, not the court's. But your take on what you're guessing that sustained bodily injury versus substantial doesn't mean anything. You're just guessing at that. You have no idea. Well, I can read what it says. I just don't know the history behind it, how it happens in that language. Is it your contention that this 7 only goes to conduct that the defendant herself engaged in? I think a lot of it is probably to avoid disputes about that kind of thing. So is the answer to that yes? We have a hard time getting to yes. I do apologize for that, Your Honor. I suppose I don't know the answer. I would want to read that guideline 2A2.2B3A before I'd answer that, and I don't. Is your contention that it's just sort of a typographical error or something that doesn't say victims and sustained substantial bodily injury, or is it your argument to us that all this does is talk about what she directly committed? It sounds reasonable that it only talks about what she directly admitted, or there may have been an agreement that, for purposes of this, we would recommend that the court only find her to be a victim, or the definition of victim could be different, or the significance of victim could be different in this provision than it is in the Mandatory Victims Restitution Act. I guess my answer is I don't really know. And I do apologize for that, Your Honor. It is something I should have noticed before a few minutes ago, but it is not something that I did. It does seem to me that there's something to be made of the fact that, now I'm confusing them. You're in good company with me. Bird was identified as victim one in the plea agreement. Who was? I think Bird was victim one, but I can double-check, I think. Hopefully I have that here. I am looking through the appellate's brief for this argument, and I'm not finding, well, okay. Victim one was Bird. Victim one was Bird on a factual basis. I do not recall seeing an argument about subsection 7C in the brief. I may have missed it. I personally did not catch it until just five minutes ago. I'm not seeing it. And maybe I'm not doing my job here before your honors, and I apologize for that. I do think that 8A stands on its own. That's the only provision of the plea agreement that I see. It probably won't help anybody, but I read it before I got in here, and I highlighted 7C. I don't know if that came from her saying specifically, or if I just read it to figure out what was going on. I'm not surprised by that argument. But maybe, I don't know why, maybe. We can find out where it is in the brief momentarily. Sir, do you have anything else to say to us? I don't think so, your honor. If it has no further questions, I will yield the balance of my time to you guys, and I will ask that you affirm the restitution order of the district court. Thank you very much. Ms. Hester, do you make this argument in the brief? That argument is not in the brief, your honor. It's an additional point in support of the argument that I did make. Unfortunately, it happens every time I get ready for an argument. I reread and saw that point, and that is why I'm bringing it up before the court, because I felt it was incumbent to bring it to the court's attention. Were you a party to the negotiation of this plea agreement? I was not, but I have talked to the trial attorney about it, and what she said to me was, we had no idea we would get tagged for restitution for this. The whole point of the plea agreement was to eliminate Cecilia Bradley's responsibility for this assault on Byrd, which was committed by another person. That's what Devin does. Right. That's only for the findings of fact with respect to her conduct, right? That's correct, but of course that encompasses relevant conduct. It just wasn't within the contemplation of the parties at the time that she would be ordered to pay restitution for Byrd. We're getting your hearsay testimony about what she said. Did she also say that she always thought that 8A, the victims there, was defined by these statutory terms, even though it doesn't say that? I think it didn't occur to her that it would mean anything else. She didn't say that. She didn't say that. That's my assumption. What I do know is that it never occurred to her that she would get tagged for restitution to this other person. Unfortunately, the way that it works in district court is you don't see the request for restitution until after you've pleaded guilty. In this case, even after the first PSR is filed. Unless it's in the plea agreement, you don't even know that that's going to be requested. Did you all file a response to that? Yes. And did the response make the argument about Section 7? No. Okay. I would like to talk about the government's interpretation of the term victim. Just stop for a second. So when did you... I'm kind of surprised. I saw that. You were making some argument about what she was responsible for. I read the plea agreement to try to figure it out, and I stopped on that point. But when did you find that point? I stopped on it. You talked about the plea agreement. She didn't have to pay. You make specific things about MVRA and other things like that. You came upon it when you were preparing for oral argument. Right. I mean, I wrote the... I honestly don't know what I was thinking a year ago when I wrote these briefs. I mean, it's been a whole year. So, you know, when I prepare for oral argument, I start over again, basically. Well, which is, I always tell lawyers it's a good thing to do, but often you have to... I mean, you know, we tag you if you haven't made the argument in the brief. I understand that. But I think that it's reasonably within the scope of the argument that we did make. You know, because I did argue that you have to interpret the plea agreement as a whole and that it's the point of interpreting the plea agreement is... Maybe I read more than I should have, but you want to make some other point. Well, I did want to make the point that I think the government's interpretation of the definition of victim under the statute is incorrect because the statutory definition of victim also talks about the offense and it talks about the defendant's conduct specifically underlying the offense. And in fact, in the Blake case, this court specifically said that the term victim includes that limitation, the offense of conviction. So I think that that's contrary to the established precedent of this court to say that the definition of victim under the statute isn't limited to the offense of conviction. It is limited to the offense of conviction. Well, it's not limited to... It's not even limited to charge conduct. In the plea agreement. Well, in the plea agreement, but he's trying to say that the statutory definition of victim isn't limited to the victim of the offense, and that is wrong. Under Blake, that is wrong. He's trying to say that in paragraph A-1, the victim of the offense is something different than the definition of the victim. But if you go down to the definition of the term victim again, it limits it to the victim of the offense that the defendant has been convicted of. On offense, I thought he said. On offense, but you have to keep reading it. But he did make the point that in the statute, the provision that he was looking at, it said X, and you had to go further to another provision for it to say what you said. Is that not right? That's what he said. That's what he said. I know, and we're going to have the statute in front of us. So, you know, go to it, but making an argument that's inconsistent with the statute is, you know, we eventually will have it all together. Right. So, is he incorrect in saying that the provision that he's relying on says on offense, and that you have to go further down to get the language that you wish? It says an offense for which restitution may be ordered, and then there's additional language that talks about conspiracy, scheme conspiracy, whatever, and it specifically talks about the defendant's offense of conviction. And in Blake, this court said that it's limited, that the definition of victim includes victim of the offense. So I really think that he is arguing contrary to this court's precedent. Not necessarily contrary to the statute. But also contrary to the statute. It is contrary to the statute as well. I think we understand that. Thanks very much. Thank you. We will come down and greet the lawyers, and then go directly to our next case.
judges: Diana Gribbon Motz, Dennis W. Shedd, Allyson K. Duncan